**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MONTEZ TAYLOR,
Petitioner

vs

ERNIE MOORE, WARDEN,
Respondent

Case No. 1:05cv526
Weber, J.
Black, M.J.

**REPORT AND RECOMMENDATION**

This matter is before the Court on petitioner's motion to hold proceedings in abeyance until the State court proceedings have been fully exhausted (Doc. 6), and respondent's memorandum in opposition thereto. (Doc. 11).

Petitioner seeks a stay of the instant habeas corpus proceeding pending exhaustion of the State court proceedings on his petition to vacate or set aside judgment wherein he claims his sentence is unconstitutional pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). Petitioner also seeks permission to amend his habeas petition to include his *Blakely* claim. (Doc. 6 at 2).

In *Blakely*, the Supreme Court held that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution. The Supreme Court reversed defendant Blakely's sentence imposed under the State of Washington's determinate sentencing scheme after finding the trial judge had enhanced the defendant's kidnaping sentence beyond the statutory maximum based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." 542 U.S. at 302-304. The Supreme Court reaffirmed its previous holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," and clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303.

The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244.

As the Court understands petitioner's *Blakely* claim, from the arguments raised in his postconviction petition, the felony sentencing statute under which he was sentenced, Ohio Rev. Code § 2929.14(B), sets forth a "statutory maximum" of three years for a felony of the first degree in the absence of additional factual findings of "aggravating circumstances" beyond those inherent in the offense itself. Likewise, the imposition of consecutive sentences under Ohio Rev. Code § 2929.14(E)(4) requires a finding of specific aggravating circumstances set forth in the statute before a consecutive, as opposed to concurrent, sentence may be imposed. Petitioner claims that since the trial court did not sentence him solely on the basis of facts found by the jury beyond a reasonable doubt, his rights under *Blakely* were violated. (Doc. 7, Exh. 18).

Assuming the Court permitted petitioner to amend the petition to include a claim that his sentence is unconstitutional under *Blakely*, his petition would be considered "mixed" with some claims being exhausted and some that are not. Rather than dismiss such actions as unexhausted so that the one-year statute of limitations would prevent a petitioner from later presenting his claims in a federal habeas corpus petition, a federal court under certain circumstances may stay a mixed petition to allow a petitioner to present his unexhausted claims in state court and then return to federal court for review of his petition. *Rhines v. Weber*, 544 U.S. 269 (2005). In *Rhines*, the United States Supreme Court stated that a district court's discretion to issue stays in habeas cases is circumscribed to the extent it must "be compatible with AEDPA's purposes." 544 U.S. at 276. The Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker*, 533 U.S. 167, 179 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to

"reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id*. at 276-77 (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)). The Court went on to state:

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277. "On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

On the issue of "good cause" for failure to exhaust, the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), stated, "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." 544 U.S. at 416. However, "there is little guidance as to what constitutes good cause for failing to exhaust state court remedies." *Noland v. Hurley*, 2006 WL 1580139, *9 (S.D. Ohio March 21, 2006)(Report and Recommendation), *adopted,* 2006 WL 1489705 (S.D. Ohio May 26,

2006)(Marbley, J.). The *Noland* Court stated:

> Various courts have adopted the standard for cause applicable to procedural defaults which requires that some "objective factor external to the defense" made it impossible to bring the claim earlier in the state court proceedings as required by *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *See e.g., Fernandez v. Artuz,* 2006 WL 121943, *5 (S.D.N.Y., January 18, 2006); *Pierce v. Hurley*, 2006 WL 143717, *8 (S.D.Ohio, January 18, 2006); *Carter v. Friel*, 2006 WL 208872, *3 (D. Utah, January 6, 2006); *Hernandez v. Sullivan*, 397 F.Supp.2d 1205, 1207 (C.D. Cal., 2005). Others, such as *Jackson v. Roe*, 425 F.3d 654 (9th Cir. 2005), and the remanded *Rhines v. Weber*, 2005 WL 3466015, *2-3 (D.S.D., December 19, 2005), conclude that the cause standard of *Rhines* requires a lesser showing than that for procedural default.
>
> In *Jackson v. Roe*, the Ninth Circuit Court of Appeals concluded that good cause did not require a showing of "extraordinary circumstances." The Court said
>
> [W]e hold that the application of an "extraordinary circumstances" standard does not comport with the "good cause" standard prescribed by *Rhines*. *See NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1979) (distinguishing between the "good cause" standard found in NLRB regulations and the "extraordinary circumstances" standard in section 10(e) of the National Labor Relations Act and noting that "'good cause' ... appears to be less stringent than ... 'extraordinary circumstances'").
>
> *Jackson*, 425 F.3d at 661-62.
>
> Thus, it would appear that good cause under *Rhines*, at least in [the Ninth] Circuit, should not be so strict a standard as to require a showing of some extreme and unusual event beyond the control of the defendant. This is supported by the Supreme Court's observation in *Pace v. DiGuglielmo*, 544 U.S. 408, 416, 125 S.Ct. 1807, 1813-14, 161 L.Ed.2d 669 (2005), wherein the Court declared that a petitioner's confusion over whether or not his petition would be timely filed was "good cause" for the petitioner to file his unexhausted petition in the federal court.
>
> Another court to discuss the standard of good cause under *Rhines* was the Eastern District of Pennsylvania. That court concluded that the good cause standard falls somewhere between the "lower threshold of unfairness," and the "higher standard of extraordinary circumstances, necessary for equitable tolling in capital cases." *See Baker v. Horn*, 383 F.Supp.2d 720, 747 (E.D. Pa. 2005). This discussion of *Rhines*, while in the context of equitable tolling of a federal challenge in a capital case, examined whether the court should previously have granted a stay of the petition considering the petitioner's particular circumstances and the shifting state of the law in Pennsylvania at the time the original petitioner was filed.
>
> The federal district courts have also developed a split of authority on whether ineffective assistance of post-conviction counsel qualifies as good cause to permit a

> stay of the federal proceedings. At least five district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did constitute good cause for failure to exhaust claims in state proceedings, most without much discussion of the matter. *See e.g., Rhines v. Weber*, 2005 WL 3466015, *2-3 (D.S.D., December 19, 2005); *Ramchair v. Conway*, 2005 WL 2786975 at *16 (E.D.N.Y., October 26, 2005); *Boyd v. Jones*, 2005 WL 2656639 at *4 (E.D. Mich., October 14, 2005); *Fradiue v. Pliler*, 2005 WL 2204862 at *2 (E.D. Cal., September 8, 2005); and *Martin v. Warren*, 2005 WL 2173365 at *2 (E.D. Mich., September 2, 2005). Similarly at least three district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did not constitute good cause. *See, e.g., Carter v. Friel*, 2006 WL 208872, *3 (D. Utah, January 6, 2006); *Vasquez v. Parrott*, 397 F. Supp.2d 452, 464 (S.D.N.Y., 2005); *Hubbert v. Renico*, 2005 WL 2173612 at *3 (E.D. Mich., September 7, 2005).
>
> Thus, the split of authority is broad and varied. However, the discussions by the Pennsylvania court in *Baker* and the Ninth Circuit in *Jackson* support ... [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Noland v. Hurley*, 2006 WL 1580139, *9-*10, quoting *Riner v. Crawford*, 415 F. Supp.2d 1207, 1209-11 (D. Nevada 2006).

In the instant case, petitioner has simply failed to address the question of "good cause" and has not presented any reasons for his failure to exhaust his *Blakely* claim. On his direct appeal, petitioner, through counsel, filed a notice of appeal and brief in support of jurisdiction with the Supreme Court of Ohio on May 10, 2004. (Doc. 7, Exhs. 14, 15). *Blakely* was decided on June 24, 2004, while petitioner's appeal was still pending. However, petitioner did not attempt to amend or supplement his appeal to raise a *Blakely* claim. The Supreme Court of Ohio denied leave to appeal on August 4, 2004. (Doc. 7, Exh. 17). Thus, it would appear that petitioner procedurally defaulted his *Blakely* claim by failing to present it to the Supreme Court of Ohio.

Nearly one year later, on June 22, 2005, petitioner filed a petition to vacate or set aside

judgment with the state trial court and raised for the first time a claim that his sentence was unconstitutional pursuant to *Blakely*. (Doc. 7, Exh. 18). On July 20, 2005, the trial court denied petitioner's motion. (Doc. 7, Exh. 20). Petitioner then filed his federal habeas corpus petition in this Court on August 8, 2005. (Doc. 1). On August 19, 2005, he appealed the denial of his postconviction petition to the First District Court of Appeals. (Doc. 7, Exhs. 21, 22). His appeal is still pending before the state court of appeals.

In determining "good cause" for failure to exhaust, "the relevant inquiry is the petitioner's justification for failing to exhaust his or her other claims prior to filing a federal habeas petition." *Hernandez v. Sullivan*, 397 F. Supp.2d 1205, 1207 (C.D. Cal. 2005). In the present case, petitioner has presented no reasons why he did not exhaust his *Blakely* claim before filing the instant federal habeas corpus petition. He has failed to explain why he did not present his claim to the Supreme Court of Ohio during the pendency of his direct appeal. Nor has he explained why he waited almost one year before raising his *Blakely* claim in his postconviction petition when the time for filing a postconviction petition in Ohio is 180 days. *See* Ohio Rev. Code §§ 2953.21(A), 2953.23(A). Thus, petitioner has not shown "good cause" for his failure to exhaust his *Blakely* claim.

Most importantly, even assuming petitioner had shown "good cause" for his failure to exhaust his *Blakely* claim, he has not shown the claim is potentially meritorious to justify a stay in this matter. Initially, the Court must disagree with respondent's contention that petitioner's *Blakely* claim is without merit because *Blakely* does not apply to cases on collateral review. Respondent is correct that the Sixth Circuit has held the *Blakely* and *Booker* decisions do not apply retroactively to collateral review proceedings where the underlying conviction became final on direct review prior to the time *Blakely* and *Booker* were decided. *See, e.g., Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir.), *cert. denied,* 126 S.Ct. 199 (2005); *Spiridigliozzi v. United States,* 117 Fed. Appx. 385,

394 (6th Cir. Nov. 15, 2004) (not published in Federal Reporter); *see also Williams v. Haviland,* No. 04cv7054, 2005 WL 1566762, at *5 n.2 (N.D. Ohio July 1, 2005) (unpublished); *Mosby v. Turner,* No. 3050669, 2005 WL 2175173, at *2 (M.D. Tenn. Aug. 31, 2005) (unpublished). However, in this case, petitioner's conviction did not become final until after *Blakely* was decided. "State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" *Beard v. Banks*, 542 U.S. 406, 411 (2004)(quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)). Petitioner's conviction became final on November 2, 2004, ninety days after the August 4, 2004 decision of the Supreme Court of Ohio to deny leave to appeal. *Blakely* was decided on June 24, 2004. Therefore, petitioner's conviction was not "final" prior to the *Blakely* decision and respondent's argument concerning retroactivity is without merit.

Nevertheless, petitioner has failed to show his *Blakely* claim is potentially meritorious. *Rhines*, 544 U.S. at 278. Contrary to petitioner's argument, the jury in petitioner's case considered aggravating and mitigating factors in petitioner's capital case and recommended life without parole instead of a death sentence. *See* Doc. 7, Exh. 8. The jury specifically found such factors "beyond a reasonable doubt," *Id.*, and the trial judge did not rely on facts not found by the jury in imposing the sentence of life without parole.

The trial court also imposed consecutive sentences in petitioner's case. The Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (February 27, 2006), recently declared unconstitutional several Ohio statutory sentencing provisions, including Ohio Rev. Code § 2929.14 (E)(4)[1], which governs the imposition of consecutive sentences, because section 2929.14(E)(4)

---

[1] Ohio Rev. Code § 2929.14(E)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if

requires judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences in violation of *Blakely*. To remedy Ohio's felony sentencing statutes, the Supreme Court of Ohio excised the unconstitutional provisions of the statutes in accordance with the United State Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety). The Court concluded that "[a]fter the severance, judicial factfinding is not required before the imposition of consecutive prison terms," *Id.* at ¶ 99, and "that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id*. at ¶ 100; syllabus ¶7.[2]

The sentencing transcript and order are essentially silent on the findings of aggravating circumstances for purposes of the imposition of consecutive sentences under Ohio Rev. Code

---

> the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

[2] The *Foster* Court further held that any Ohio cases *pending on direct review* must be remanded to trial courts for new sentencing hearings not inconsistent with its opinion in *Foster*. *Id* at ¶ 104. It is clear that petitioner's case was not pending on direct review when *Foster* was decided.

§ 2929.14(E)(4). (Doc. 7, Exh. 9, Tr. 3046-3049). Under the circumstances of this case, however, petitioner's sentence of life without the possibility of parole under the first count of aggravated murder renders the sentence on the sentence count of aggravated murder, *i.e.*, a second life term without the possibility of parole, irrelevant. Thus, whether or not the jury found facts supporting the imposition of consecutive sentences by the judge under the state statute is irrelevant and any failure of the trial judge in sentencing in this regard would be harmless. A defendant sentenced to life imprisonment without parole pursuant to Ohio Rev. Code § 2929.03 is not eligible for parole and must be imprisoned until death, Ohio Rev. Code § 2967.13(E), and cannot earn credit toward early release. Ohio Rev. Code § 2967.193(C). As a result, any error in consecutive sentencing is not prejudicial. *See State v. Stanishia*, Franklin App. No. 01AP-1298, 2002 WL 31030916, *1 (Ohio App. 10 Dist. Sept. 12, 2002) (reasoning that the trial court's failure to make a required finding before imposing consecutive sentences was harmless error where one of the sentences was life without parole, rendering the consecutive sentences irrelevant and non-prejudicial). Since *Blakely* errors are not structural errors, *Washington v. Recuenco*, 126 S.Ct. 2546 (2006), such errors do not require reversal if harmless beyond a reasonable doubt. *Id.*

Petitioner has failed to justify a stay in this federal habeas corpus action. Therefore, his motion to hold proceedings in abeyance until the State court proceedings have been fully exhausted (Doc. 6) and to amend his habeas petition to include his *Blakely* claim should be denied.

**IT IS THEREFORE RECOMMENDED THAT** petitioner's motion to hold proceedings in abeyance until the State court proceedings have been fully exhausted (Doc. 6) and motion to amend

his habeas petition to include a *Blakely* claim be **DENIED**.

Date: 8/14/2006

s/Timothy S. Black
Timothy S. Black
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MONTEZ TAYLOR,
Petitioner

vs

Case No. 1:05cv526
Weber, J.
Black, M.J.

ERNIE MOORE, WARDEN,
Respondent

**NOTICE**

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).